**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------ X

MICHAEL RICHARDSON,

                **Plaintiff,**

  - against -

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY,

            **Defendant.**

------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/14/09

**OPINION AND ORDER**

**09 Civ. 1841 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

        Michael Richardson brings this action pursuant to the Social Security Act (the "Act"),[1] seeking judicial review of a final decision by the Commissioner of Social Security (the "Commissioner") denying his claim for Supplemental Security Income ("SSI") benefits.  Richardson moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) ("Rule 12(c)"), arguing that the Administrative Law Judge ("ALJ") erred by:  1) failing to follow

---

[1]    *See* 42 U.S.C. § 405(g).

the treating physician rule; 2) relying on the Medical-Vocational Guidelines[2] in

lieu of obtaining testimony from a vocational expert; and 3) failing to properly

evaluate Richardson's credibility.  Richardson requests a reversal of the

Commissioner's determination and a remand solely for the calculation and award

of benefits.  In the alternative, he requests that his case be remanded to the Social

Security Administration ("SSA") for a prompt re-hearing and amended decision.

The Commissioner cross-moves under Rule 12© to have his decision affirmed.

For the reasons set forth below, Richardson's request for a remand for further

proceedings is granted, and the Commissioner's cross-motion is denied.

## II.   BACKGROUND

### A.   Procedural History

On August 31, 2004, Richardson filed an application for SSI benefits

alleging that he was disabled as of the date of the application due to lumbar spine

impairment, degenerative joint disease, schizo-affective disorder, and other mental

and physical limitations.[3]  The claim was denied on December 1, 2004,[4] and

---

[2]     *See* 20 C.F.R. Part 404, subpart P, Appendix 2 [hereinafter "the Guidelines"].

[3]     *See* Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings ("Pl. Mem.") at 1.  Richardson originally claimed that he had been disabled since January 1, 1998. *See id.*  On May 19, 2008, Richardson made an application to amend his onset date to match the date of his SSI application. *See id.* The ALJ granted his application to amend the onset date. *See*

Richardson filed a request for an administrative hearing.[5]  A hearing took place

before ALJ Newton Greenberg on January 3, 2007.[6]  Richardson testified at the

hearing.[7]  On February 9, 2007, the ALJ found that Richardson was not disabled.[8]

Richardson requested review of the ALJ's decision by the Appeals Council.[9]

On January 4, 2008, the Appeals Council vacated the ALJ's decision

and remanded the case for a new hearing.[10]  The Appeals Council ordered the ALJ,

on remand, to: consider new medical evidence submitted by Richardson; consider

the effect of all of Richardson's impairments on his ability to work; provide

sufficient rationale for the weight afforded to Richardson's subjective complaints;

provide sufficient rationale for the determination of Richardson's Residual

Functional Capacity ("RFC"); and obtain specific evidence from a vocational

---

Transcript of the Administrative Record ("Tr."), filed as part of the
Commissioner's Answer pursuant to 42 U.S.C. § 405(g), at 18.

[4]     *See* Tr. at 42-45.

[5]     *See id.* at 39 (request filed on December 30, 2004).

[6]     *See id.* at 53-56.

[7]     *See* Pl. Mem. at 1.

[8]     *See* Tr. at 60-72.

[9]     *See id.* at 73 (request for review filed on March 5, 2007).

[10]    *See id.* at 80.

expert.[11]  A new hearing before the ALJ was held on May 19, 2008.[12]  On June 9,

2008, the ALJ again found Richardson not disabled.[13]  Richardson requested

review of this decision by the Appeals Council on July 18, 2008,[14] which was

denied on February 24, 2009.[15]  When this request was denied, the Commissioner's

decision became final.

### B.    Factual Background[16]

#### 1.    Richardson's Age, Education and Work History

Richardson, who is forty-nine years old, was forty-four at the alleged

onset of his disability.[17]  He completed one year of college in 2002.[18]  He worked

as a stock clerk at a video store from 1996 until 1999.[19]  Prior to that time,

---

[11]    *See id.* at 80-81.

[12]    *See id.* at 30-33.

[13]    *See id.* at 15-29.

[14]    *See id.* at 12.

[15]    *See id.* at 4-6.

[16]    I will only recount those facts pertinent to this motion.  This requires omitting most of the evidence pertaining to Richardson's physical — as opposed to mental — impairments.

[17]    *See id.* at 90.

[18]    *See id.* at 98.

[19]    *See id.* at 94.

Richardson spent nine years working as communications operator for the United States Army, as well as some time in prison.[20]  Although Richardson has not been entirely clear with the Social Security Administration ("SSA") regarding his work history,[21] the record indicates that his only employment in the last ten years was in 2006, when was required to work in a mail room as a condition for receiving public assistance.[22]  Richardson testified that he worked in the mail room for three days per week,[23] although his physician's treatment notes during that time indicate that he was working "full-time."[24]

### 2.    Evidence of Richardson's Mental Disability

The administrative record in this case consists of psychiatric reports from the Veteran's Administration Hospital, Beth Israel Medical Center, the Federal Employment and Guidance Service ("FEGS"), and physicians retained by the SSA.  The record also includes a letter from Richardson's brother — with whom Richardson resides — and Richardson's testimony at the January 2007 and

---

[20]    *See id.* at 94, 408.

[21]    Richardson's Insured Status Report indicates no earnings after 1990, whereas his Disability Report indicates that he was employed until 1999. *See id.* at 83, 94.

[22]    *See id.* at 399-401.

[23]    *See id.* at 400.

[24]    *Id.* at 326.

May 2008 hearings.

### a. Veteran's Administration Hospital Evidence

Evidence from the Veteran's Administration Hospital consists of psychiatric  reports and treatment notes primarily from Richardson's treating psychiatrist, Dr. Marie Weinberger.  Dr. Weinberger began treating Richardson in 2002 for psychiatric problems including depression, anxiety, paranoia, schizo-affective disorder, auditory hallucinations, sleeplessness, racing thoughts, and heightened feelings of tension and anger.[25]  Her treatment notes indicate that Richardson was prescribed antipsychotic, antidepressant, and antianxiety medication, as well as sleeping pills.[26]

Dr. Weinberger's treatment notes begin on March 23, 2004, and indicate that Richardson was "doing well," was not feeling depressed or hearing voices, and was sleeping well.[27]  A nearly identical treatment note appears for Richardson's next two visits, with an additional note in August 2004 (the month of Richardson's alleged onset of disability) that Richardson's mood was euthymic, his thought was goal-oriented, he felt that his medications were working well for him,

---

[25]     *See id.* at 200, 202-203, 209.

[26]     *See id.* at 193, 200.

[27]     *See id.* at 242.

and that he had an optimistic attitude.[28]  In November of 2004, Dr. Weinberger's notes indicate that Richardson was experiencing heightened anxiety again.[29]  In March 2005, her notes indicate that Richardson was also experiencing heightened stress and depression.[30]  In December 2005, her notes indicate that Richardson had started hearing voices and other noises again, and in January 2006, the notes indicate that he was experiencing bouts of depression followed by times where he was "alright again."[31]  Throughout this time, Dr. Weinberger often pointed out that, despite his complaints, Richardson seemed calm, coherent, and well-groomed.[32]

After the middle of 2006, Dr. Weinberger's notes indicate a decline in Richardson's condition.  Although her notes in September 2006 say that he was "stable" on his medication,[33] the rest of her treatment notes until March 2007 are peppered with Richardson's complaints of auditory hallucinations,[34] mood and

---

[28]     *See id.* at 235.

[29]     *See id.* at 233.

[30]     *See id.* at 225.

[31]     *Id.* at 208-209.

[32]     *See id.* at 208-209, 225.

[33]     *Id.* at 203.

[34]     *See id.* at 202.

7

sleep disturbances,[35] and difficulty being around other people without experiencing heightened anxiety and irritation.[36] Her notes repeat that Richardson was "continuing to not do well," even on his medications.[37] In October 2006, Dr. Weinberger indicated that Richardson reported a single use of heroin "to calm down."[38] Richardson subsequently denied that this was an ongoing habit.[39] In February 2007, Dr. Weinberger's notes indicate that Richardson described a panic attack that he suffered on a train.[40] The panic attack caused Richardson to stand on the platform for two hours and then to walk more than four miles to get home.[41]

In December 2006, Dr. Weinberger completed a Physician's Report for Claim of Disability Due to Mental Impairment.[42] She determined that Richardson had "moderate" restrictions of activities of daily living and difficulty in maintaining social functioning, "frequent" deficiencies of concentration, and

---

[35]   *See id.* at 203.

[36]   *See id.* at 202.

[37]   *Id.*

[38]   *Id.*

[39]   *See id.* at 200.

[40]   *See id.*

[41]   *See id.*

[42]   *See id.* at 177.

"repeated" episodes of deterioration or decompensation in work settings that caused Richardson to withdraw from such settings or experience an exacerbation of symptoms.[43]  She reported that Richardson had psychological abnormalities as evidenced by perceptual or thinking disturbances, mood disturbance, emotional liability, and impulse control problems.[44]  She also reported that Richardson had a depressive syndrome characterized by sleep disturbances, difficulty concentrating or thinking, suicidal thoughts, and hallucinations, delusions, or paranoid thinking.[45]

In April 2008, Dr. Weinberger completed a Psychiatric Impairment Questionnaire.[46]  She diagnosed Richardson with schizo-affective disorder as evidenced by sleep and mood disturbances, emotional liability, delusions or hallucinations, anhedonia, paranoia, generalized persistent anxiety, hostility, and irritability.[47]  She reported that Richardson was "markedly limited" in his ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerance, sustain ordinary routine without supervision, work in

---

[43]     *Id.* at 179-180.

[44]     *See id.* at 183.

[45]     *See id.* at 186.

[46]     *See id.* at 350.

[47]     *See id.* at 351.

9

coordination with or proximity to others without being distracted by them,

complete a normal workweek without interruptions from psychologically-based

symptoms, interact appropriately with the general public, accept instructions and

respond appropriately to criticism from supervisors, and get along with co-workers

or peers without distracting them or exhibiting behavioral extremes.[48]  She reported

that Richardson was "moderately limited" in other areas, such as the ability to

travel to unfamiliar places or use public transportation, and reported that he was

incapable of tolerating even a low level of work stress.[49]

### b.    FEGS Evidence

Psychological evidence from the FEGS includes the results of a

psychiatric assessment diagnosing Richardson with chronic schizophrenia, panic

disorder with agoraphobia, and depression.[50]  These diagnoses were based on

Richardson's complaints of: depressed mood, panic, poor concentration, severe

headaches, perspiring, feeling that others were against him, insomnia, anxiety or

fearfulness, needing to flee places, rapid heart rate, suicidal thoughts, shortness of

---

[48]    *See id.* at 353-355.

[49]    *See id.* at 355-356.

[50]    *See id.* at 286.

breath, forgetfulness, feelings of irritation, and homicidal or violent thoughts.[51]
With respect to Richardson's mental health problems, he was found to be
temporarily disabled.[52]  The FEGS physician Dr. Myron Seidman reported that
Richardson's psychological conditioned rendered him unable to work.  Dr.
Seidman further opined that, in view of Richardson's chronic psychological
condition, he doubted that "a brief 'wellness' [would] enable [Richardson] to be
steadily employable."[53]

### c.    SSA Evidence

At the behest of the SSA, Dr. Richard King administered a psychiatric
assessment of Richardson.  Dr. King reported that Richardson was "anxious and
depressed because of back pain," and diagnosed him with mild anxiety and
depression, and antisocial personality disorder.[54]  Overall, Dr. King reported a
"fair" prognosis, noting that Richardson was friendly and appropriate, with a
euthymic mood, average intellectual functioning, and the ability to perform routine

---

[51]    *See id.* at 283-284.

[52]    *See id.* at 286.

[53]    *Id.* at 276.

[54]    *Id.* at 145.

11

activities of daily life.[55]  Dr. King reported that Richardson had a satisfactory ability to understand instructions and respond appropriately to supervision and other work pressures in a work setting.[56]

### d.    Richardson's Testimony and His Brother's Letter

Richardson testified twice: on January 3, 2007 and May 19, 2008.[57]  In January 2007, Richardson told the ALJ that his physical pain did not allow him to "sit too long," and that he was unable to do household chores such as shopping or dressing himself.[58]  He reported that he had been working three days per week at a mail room in order to receive public assistance, but that he was unable to keep working there due to confusion, fatigue, and a physical inability to climb stairs.[59]

At the May 2008 hearing, Richardson reported that he had asthma, diabetes, and severe back pain.[60]  When the ALJ asked about Richardson's auditory hallucinations, Richardson responded, "[t]imes I still that like when I take the subway, you know, I can't be around a lot of people, you know, because I feel that

---

[55]    *See id.* at 144.

[56]    *See id.* at 145.

[57]    *See id.* at 392, 404.

[58]    *See id.* at 396-397.

[59]    *See id.* at 401-402.

[60]    *See id.* at 406.

they trying to do me harm.  Or, you know, I, I feel that somebody is tapping into my brain trying to read my thoughts."[61]  When the ALJ asked whether Richardson was "taking drugs," Richardson replied that he was only taking prescription drugs.[62]  The ALJ then said, "[y]ou did have a problem with street drugs," and Richardson responded "yeah."[63]  Richardson did not provide the ALJ with any information regarding his single use of heroin approximately two years prior to this hearing.

Richardson's brother, Timothy Richardson, wrote a letter on April 4, 2008, stating that he cared for Richardson.[64]  He wrote that Richardson had trouble being around people and crowds, and that these stress factors caused Richardson to freak out, freeze, or go into a trance.[65]  He also reported that Richardson gets into fights with people who come too close to him.[66]

**C.    The ALJ's Decision and Analysis**

On June 9, 2008, the ALJ held that Richardson "ha[d] not been under

---

[61]    *Id.* at 407.

[62]    *See id.* at 407-408.

[63]    *Id.* at 408.

[64]    *See id.* at 359.

[65]    *See id.*

[66]    *See id.*

a disability within the meaning of the [SSA]" from the alleged onset date through the date of the ALJ's decision.[67]  Applying the five-step process for determining whether an individual is disabled,[68] the ALJ first assessed whether Richardson had engaged in substantial gainful activity since the alleged onset date.[69]  Although the ALJ reported a strong suspicion that Richardson's 2006 work in the mail room had been full-time, the ALJ decided not to "predicate a denial of his claim on an assumption of substantial gainful activity."[70]

Next, the ALJ determined that Richardson had the following "severe" impairments:  degenerative joint disease, lumbar radiculopathy, and schizo-affective disorder, not otherwise specified.[71]  The ALJ further found that Richardson had the following "non-severe" impairments:  diabetes mellitus, type II, hypertension, hypercholesterolemia, asthma, sickle cell traits, and gastroesophageal reflux disease ("GERD").[72]  The ALJ found that these impairments did not meet or medically equal one of the impairments listed in the

---

[67]   *See id.* at 19.

[68]   *See* 20 C.F.R. § 416.920(b).  This process is discussed in detail below.

[69]   *See* Tr. at 21.

[70]   *Id.*

[71]   *See id.*

[72]   *See id.*

14

regulations.[73]  He reached this determination by concluding that Richardson did not

have "marked" limitations, of an extended duration, in two or more of the

following categories:  the activities of daily living, maintaining social functioning,

maintaining concentration, persistence or pace, and repeated episodes of

decompensation.[74]  The ALJ instead concluded that Richardson had mild

limitations in daily living and maintaining concentration, moderate limitations in

social functioning, and no evidence of episodes of decompensation.[75]  The ALJ

specifically found the record to be "devoid of evidence of decompensation [and]

potential episodes of decompensation."[76]

In assessing Richardson's residual functioning capacity ("RFC"), the

ALJ determined that Richardson could perform sedentary work — specifically, six

hours of sitting and two hours of standing or walking.[77]  The ALJ held that

Richardson had the mental capacity to perform unskilled work, utilizing such skills

as understanding, remembering, carrying out simple instructions, making simple

work-related decisions, responding appropriately to supervisors and co-workers,

---

[73]    *See id.*

[74]    *See id.* at 21-22.

[75]    *See id.* at 22.

[76]    *Id.*

[77]    *See id.*

and dealing with changes in a routine work setting.[78]  The ALJ held that —

although Richardson's physical disabilities prevented him from engaging in his

past relevant work — the Regulations' Medical-Vocational Guidelines indicated

that Richardson could perform unskilled, sedentary work.[79]  Because he found that

Richardson could perform such work, the ALJ found Richardson to be not

disabled.[80]

The ALJ explained the relative weight that he gave to each piece of

evidence in the record.  He found that Richardson's subjective complaints were

"seriously undercut by inconsistent statements,"[81] and that Richardson's treating

physician's report that Richardson was experiencing a "high function and quality

of life," combined with evidence that Richardson was working full-time in 2006,

"fatally undermine[d]" Richardson's allegations of disability.[82]  Regarding

Richardson's alleged mental disabilities, the ALJ found that Dr. Weinberger's

clinical reports (diagnosing a number of mental impairments) conflicted with her

treatment notes, which frequently described Richardson as stable while on

---

[78]     *See id.*

[79]     *See id.* at 28.

[80]     *See id*.

[81]     *Id.* at 26.

[82]     *Id.* at 25.

medication and appearing calm and coherent.[83]

The ALJ also noted that the clinical findings in Dr. Weinberger's report were "based solely on the claimant's self-reported presentation of his symptoms," and that the record lacked other credible evidence supporting the serious clinical findings in her report.[84]  As a result, the ALJ gave no weight to Dr. Weinberger's April 2008 report,[85] and little weight to Dr. Weinberger's earlier report.[86]  Instead, the ALJ gave "substantial weight" to the opinion of the SSA's one-time consulting psychiatrist, Dr. King.[87]  Although the ALJ noted that Dr. King's opinion – which was rendered in October 2004 – did not "carry prospective weight,"  Dr. King's opinion was afforded substantial weight because his findings were "consistent with other evidence."[88]  The opinion of FEGS physician Dr. Seidman (asserting that Richardson's psychological condition rendered him

---

[83]     *See id.*

[84]     *Id.*

[85]     *See id.* at 27.

[86]     *See id.* The ALJ assigned little weight to "Dr. Weinberger's 2004 report." *Id.*  There are only two reports from Dr. Weinberger in this record: an April 2008 report and a December 2006 report. *See id.* at 350, 177.  Because the ALJ referred specifically to the April 2008 report, I presume that the second report to which he referred was actually the December 2006 report.

[87]     *See id.* at 27.

[88]     *Id.*

17

disabled) was given little weight because the ALJ found that it was inconsistent with Dr. Weinberger's treatment notes and that it was incredible.[89]  The ALJ found the FEGS opinion to be incredible because it reported command hallucinations directing Richardson to harm others (in contradiction to Dr. Weinberger's notes, which report no command hallucinations).  Furthermore, the FEGS opinion reported that Richardson had a limited ability to read despite having completed one year of college, an assertion the ALJ discounted in its entirety.[90]

## III.   LEGAL STANDARD

### A.   Substantial Evidence

In a disability benefits case, a district court does not conduct a *de novo* review of the ALJ's decision.[91]  The ALJ must set forth the crucial factors supporting his decision with sufficient specificity,[92] but a district court may not disturb the ALJ's decision if "correct legal standards were applied" and

---

[89]     *See id.*

[90]     *See id.* at 26.

[91]     *See Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996).  *Accord Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

[92]     *See Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

18

"substantial evidence supports the decision."[93] "Substantial evidence is 'more than

a mere scintilla. It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'"[94]

"To determine whether the findings are supported by substantial

evidence, the reviewing court is required to examine the entire record, including

contradictory evidence and evidence from which conflicting inferences can be

drawn."[95] Even if there is also substantial evidence for the claimant's position, the

Commissioner's decision must be affirmed when substantial evidence exists to

support it.[96] Moreover, the Commissioner's findings of fact, as well as the

inferences and conclusions drawn from those findings, are conclusive even in cases

where a reviewing court's independent analysis of the evidence might differ from

---

[93]     *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004); 42 U.S.C.
§ 405(g) ("The findings of the Commissioner of Social Security as to any fact, if
supported by substantial evidence, shall be conclusive."). *Accord Halloran*, 362
F.3d at 31.

[94]     *Halloran*, 362 F.3d at 31 (quoting *Richardson v. Perales*, 402 U.S.
389, 401 (1971)). *Accord Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

[95]     *Snell v. Apfel*, 177 F.3d 128, 132 (2d Cir. 1999).

[96]     *See Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where
there is substantial evidence to support either position, the determination is one to
be made by the factfinder."). *Accord Morillo v. Apfel*, 150 F. Supp. 2d 540, 545
(S.D.N.Y. 2001).

the Commissioner's analysis.[97]

## B.   Five-Step Process

Pursuant to the Act, the SSA has established a five-step sequential process to determine whether a claimant is disabled.[98]  At step one, the ALJ must decide whether the claimant is engaging in substantial gainful work activity ("SGA").  Generally, if the claimant has earnings from employment above a certain level, he is presumed to be able to engage in SGA and is deemed not disabled.[99]  If the claimant is not engaging in SGA, the analysis continues.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment, or a combination thereof, that is "severe."[100] According to the Regulations, an impairment or combination of impairments is "severe" if it significantly limits the claimant's ability to perform basic work-related activities.  An impairment is "not severe" when the evidence establishes

---

[97]     *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).  Because credibility is a question of fact, the Commissioner has discretion to determine whether or not a claimant's subjective complaints are credible. *See Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir. 1984) (citing *McLaughlin v. Sec'y of Health, Educ. & Welfare*, 612 F.2d 701, 705 (2d Cir. 1980)).

[98]     *See* 20 C.F.R. § 416.920(a).

[99]     *See id.* § 416.920(b).

[100]     *Id.* § 416.920©.

only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to work.[101]  If the claimant has a severe impairment or combination thereof, the analysis must proceed.

At step three, the ALJ determines whether the claimant's impairment or combination thereof meets or medically equals the criteria of a listed impairment.[102]  If the impairment is contained in the Listings, the claimant is considered disabled.[103]  If not, the analysis continues.

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity ("RFC"),[104] which is his ability to complete work-related activities on a sustained basis despite limitations from impairments. In making this finding, the ALJ must consider all of the claimant's impairments, including any non-severe impairments.[105]  At step four, the ALJ must determine

---

[101]   *Id.* § 416.921(a).

[102]   *See id.* Part 404, subpart P, Appendix 1 (hereinafter the "Listings"). The Listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just "substantial gainful activity." *See* 20 C.F.R. § 416.925(a) (the purpose of the Listings is to describe impairments "severe enough to prevent a person from doing any gainful activity").

[103]   *See id.* § 416.909.

[104]   *See id.* § 416.920(e).

[105]   *See id.*

whether the claimant has the RFC to perform any relevant work that the claimant has done in the past.[106]  If the claimant is unable to do any past relevant work, the analysis proceeds.

At the last step of the evaluation, the ALJ must determine whether the claimant's RFC, age, education and work experience allow him to complete any other work in the national economy.[107]  If so, the claimant is not disabled.  But if he is unable to do other work, the claimant is disabled.  Although the claimant generally continues to have the burden of proving disability, a limited burden of production shifts to the SSA at this final step.  To support a finding that the claimant is not disabled at this step, the SSA must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can perform.[108]

### 1.   The Medical-Vocational Guidelines

Typically, the ALJ's burden of production at the final step of this analysis is fulfilled by reference to the applicable Medical-Vocational Guidelines

---

[106]   *See id.* § 416.920(f).

[107]   *See id.* § 416.920(g).

[108]   *See id.* §§ 416.912(g) and 416.960(c).

provided by the Regulations.[109] These Guidelines take into account the claimant's

RFC in conjunction with his age, education and work history.[110] Using this

information, the Guidelines indicate whether the claimant is able to engage in

substantial gainful work that exists in the national economy.[111] "Although the

[Guidelines'] results are generally dispositive, exclusive reliance on the

[Guidelines] is inappropriate where the Guidelines fail to describe the full extent of

a claimant's physical limitations."[112] If a claimant's "non-exertional" limitations —

independent of his "exertional" limitations — significantly diminish his ability to

perform the full range of work indicated by the Guidelines, "then the Secretary

must introduce the testimony of a vocational expert (or other similar evidence) that

jobs exist in the economy which claimant can obtain and perform."[113] A "non-

exertional" limitations is one that affects a claimant's ability to meet work

demands that are unrelated to strength.[114] According to the Regulations, anxiety,

---

[109]   *See* the Guidelines; *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999).

[110]   *See Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996).

[111]   *See Rosa*, 168 F.3d at 78.

[112]   *Id.*

[113]   *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986).

[114]   *See* 20 C.F.R. § 416.969a(a); *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

depression, and difficulties with attention or concentration are examples of possible non-exertional limitations.[115]

## C.   The Treating Physician Rule

Under the "treating physician" rule, "the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence."[116] Even if the ALJ finds the treating physician's opinion to be inconsistent with other substantial evidence, the physician's medical opinion is still afforded "some extra weight," because "the treating source is inherently more familiar with a claimant's medical condition than are other sources."[117]  Because mental disabilities are difficult to diagnose without subjective, in-person examination, the treating physician rule is "particularly important" in the context of mental health.[118]  When

---

[115]    *See* 20 C.F.R. §§ 416.969a(c)(1)(I), (ii).

[116]    *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).  *See also* 20 C.F.R. § 416.927(d)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.").

[117]    *Schisler v. Bowen*, 851 F.2d 43, 47 (2d Cir. 1988).

[118]    *Rodriguez v. Astrue*, No. 07 Civ. 534, 2009 WL 637154, at *26 (S.D.N.Y. Mar. 9, 2009).

examining psychiatric or psychological evidence, it is important that greater weight be given to those physicians who have a "relationship" with the patient.[119] "The opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources."[120]

When a treating physician's opinion is not given "controlling" weight, the Regulations require the ALJ to consider several factors in determining how much weight it should receive.[121]  Such factors include the frequency of examination and the length and nature of the treating doctor's relationship with the patient, the extent to which medical evidence supports the doctor's opinion, whether the doctor is a specialist, the consistency of his opinion with the rest of the medical record, and any other factors which tend to support or contradict the treating physician's opinion.[122]  After considering the above factors, the ALJ must "comprehensively set forth [his] reasons for the weight assigned to a treating

---

[119]    *Id.*

[120]    Social Security Ruling ("SSR") 96-6P, 1996 WL 374180, at *2.

[121]    *See* 20 C.F.R. § 416.927(d)(2).

[122]    *See id.* § 416.927(d)(2)(i)-(ii) and (d)(3)-(6).

physician's opinion."[123]

## D.    Standard of Review

A district court may affirm, reverse, or modify the Commissioner's final decision.[124] "'Reversal and entry of judgment for the claimant is appropriate only when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose.'"[125] The standard for remand is more lenient. For example, remand is warranted where the ALJ has based a determination on an improper legal standard or if further development of the record is necessary to fill in evidentiary gaps.[126] Failure to provide "'good reasons' for not crediting the opinion of a claimant's treating physician is also grounds for remand."[127] The Commissioner has a duty to provide a claimant with a

---

[123]    *Halloran*, 362 F.3d at 33. *See also* 20 C.F.R. § 416.927(d)(2) (stating that the agency "will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion").

[124]    *See* 42 U.S.C. § 405(g); *Butts*, 388 F.3d at 385.

[125]    *Pimentel v. Barnhart*, No. 04 Civ. 3769, 2006 WL 2013015, at * 8 (S.D.N.Y. July 19, 2006) (quoting *Cruz ex rel. Vega v. Barnhart*, No. 04 Civ. 9794, 2005 WL 2010152, at * 8 (S.D.N.Y. Aug. 23, 2005), modified on other grounds on reconsideration, 2006 WL 547681 (S.D.N.Y. Mar. 7, 2006)). *Accord Butts*, 388 F.3d at 386.

[126]    *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).

[127]    *Snell*, 177 F.3d at 133. *Accord Schaal*, 134 F.3d at 505 ("Commissioner's failure to provide 'good reason' for apparently affording no weight to the opinion of plaintiff's treating physician constituted legal error.").

clear statement of the reasons for his decision,[128] and must explain the weight he gave to medical and non-medical opinions to allow a subsequent reviewer to follow his reasoning.[129] If the ALJ's rationale could be rendered more intelligible through further findings or a more complete explanation, remand is appropriate.[130] The reviewing court must keep in mind that "[t]he Act must be liberally applied, for it is a remedial statute intended to include, not exclude."[131]

## IV.   DISCUSSION

### A.   The Parties' Contentions

*First*, Richardson claims that by assigning little or no weight to the reports of Dr. Weinberger, the ALJ violated the treating physician rule. *Second*, he claims that because his non-exertional (mental) limitations significantly diminish his ability to work, the ALJ erred by relying on the Medical-Vocational Guidelines in lieu of testimony from a vocational expert. *Third*, Richardson claims that the ALJ failed to properly evaluate his credibility.

The Commissioner argues that substantial evidence exists to support

---

[128]   *See, e.g.*, *Treadwell v. Schweiker*, 698 F.2d 137, 142 (2d Cir. 1983) ("[I]t is an elementary rule that the propriety of agency action must be evaluated on the basis of stated reason.").

[129]   *See* SSR 06-03P, 2006 WL 2329939, at *6.

[130]   *See Pratts*, 94 F.3d at 39.

[131]   *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990).

the ALJ's rejection of Dr. Weinberger's psychiatric reports, that reliance on the Medical-Vocational Guidelines was proper because Richardson's non-exertional impairments do not significantly diminish his ability to work, and that the ALJ property deemed Richardson's subjective complaints to be incredible.

## B.    The Treating Physician Rule

The ALJ violated the treating physician rule by failing to provide good reasons for his decision to assign no weight to Dr. Weinberger's April 2008 report and little weight to her December 2006 report.  Richardson had a six-year treatment relationship with Dr. Weinberger that consisted of regular appointments, frequent adjustments to his psychiatric medications, and repeated clinical assessments.  As a result of this treatment relationship, the ALJ was required to afford substantial weight to Dr. Weinberger's opinion or provide good reasons and substantial evidence supporting his decision to discount her opinion.

In disregarding Dr. Weinberger's reports, the ALJ's primary rationale was that her reports — which diagnosed profound psychiatric impairments — were inconsistent with her treatment notes describing fleeting periods of improvement and stability in Richardson's psychiatric condition.  Dr. Weinberger's notes — indicating that Richardson often appeared calm and coherent, and that he occasionally professed to be doing well on his medications — are not inconsistent

28

with the possibility of serious psychiatric impairments.[132]   Moreover, Dr.

Weinberger's notes clearly describe a degeneration of Richardson's condition

beginning in 2006.  From this time on, her treatment notes are consistent with the

reports she wrote in December 2006 and April 2008.

        The ALJ's observation that Dr. Weinberger's clinical findings were

"based solely on [Richardson's] self-reported presentation of his symptoms" also

does not amount to a "good reason" for diminishing the weight afforded to her

reports.  It is not clear that any of the psychiatrists who examined Richardson —

including Dr. King, whose opinion was given substantial weight — utilized clinical

methods other than observing Richardson's affect and asking him to describe his

mental state.  I therefore conclude that the treatment notes describing stability and

brief improvement in Richardson's mental condition, and the fact that Dr.

Weinberger's findings were based on Richardson's self-reported symptoms, are

not sufficient reasons to almost entirely discount the opinions of Dr. Weinberger.

Furthermore, even if the ALJ properly found that Dr. Weinberger's reports were

contradicted by substantial evidence, the treating physician rule still requires the

---

        [132]    *See Orn v. Astrue*, 495 F.3d 625, 634 (9th Cir. 2007) ("The primary
function of medical records is to promote communication and recordkeeping for
health care personnel — not to provide evidence for disability determinations.  We
therefore do not require that a medical condition be mentioned in every report to
conclude that a physician's opinion is supported by the record.").

ALJ to give "extra weight" to her opinions. It was, therefore, improper for the ALJ to afford little or no weight to Dr. Weinberger's reports.

Because he did not grant Dr. Weinberger's opinion controlling weight, the treating physician rule requires the ALJ to consider several factors: the length and nature of Dr. Weinberger's relationship with Richardson, the extent to which the medical evidence supports her opinion, the fact that she is a specialist in psychiatry, and the consistency of her opinion with other medical evidence in the record. Of these factors, the ALJ considered only the consistency of Dr. Weinberger's reports with the other medical evidence. Because this alone is insufficient to satisfy the treating physician rule, remand of this case for reconsideration is appropriate here.

By contrast to the ALJ's view of Richardson's treating psychiatrist, the ALJ accepted wholesale the opinion of one-time consulting psychiatrist Dr. King. The Regulations and the treating physician rule require the ALJ to apply a stricter standard to Dr. King's opinion, thereby demanding a "greater degree" of medical evidence and explanation from a one-time consultant before an ALJ can accept his opinion over the opinion of the treating physician. Instead, the ALJ held that Dr. King's opinion — rendered prior to the degeneration of Richardson's condition in 2006 — deserved substantial weight because it was "consistent with

other evidence." This explanation is vague and does not demonstrate that the ALJ utilized a heightened standard in evaluating Dr. King's opinion.

### C.    The Medical-Vocational Guidelines

Because the ALJ did not properly weigh Richardson's psychiatric evidence, it is impossible to determine whether he correctly relied upon the Medical-Vocational Guidelines. Although the ALJ decided that Richardson indeed had a schizo-affective disorder, and that this impairment was "severe," he nevertheless determined that testimony from a vocational expert was unnecessary because Richardson's non-exertional impairments do not significantly diminish his ability to work. If the ALJ had properly weighed Richardson's psychiatric evidence, he could reasonably have concluded that Richardson's schizo-affective disorder (and other mental impairments) do significantly diminish his ability to work. This observation is supported by the Appeals Council's instructions in January 2008 that the ALJ obtain testimony from a vocational expert. Thus, whether the ALJ should employ a vocational expert on remand will depend on his findings regarding Richardson's psychiatric evidence after properly applying the treating physician rule.

### D.    Richardson's Credibility

Because it is a question of fact, the ALJ's determination of

31

Richardson's credibility is entitled to deference from this Court. The ALJ discounted Richardson's subjective complaints of paranoia, anxiety and confusion because:  Richardson was unclear with the SSA and the ALJ regarding his work history; Richardson was not forthcoming with all of his physicians regarding his substance abuse history; the ALJ suspected that Richardson was addicted to his pain medication; and Richardson denied to Dr. Weinberger that he was experiencing command hallucinations despite telling his FEGS physician that he had heard voices instructing him to harm others.

It is immaterial whether this Court agrees with the ALJ's conclusion regarding how these facts reflect upon Richardson's credibility. The ALJ's conclusion was based in part upon two in-person hearings with Richardson, providing him with a perspective that this Court lacks. His determination of Richardson's credibility is not unreasonable and must be accepted by this Court.

## V.     CONCLUSION

After carefully examining the ALJ's decision and the administrative record, I conclude that the Commissioner's determination must be reversed and remanded for further proceedings not inconsistent with this Opinion and Order. Richardson's motion is hereby granted and the Commissioner's cross-motion is denied. The Clerk of the Court is directed to close these motions (Documents # 7

32

& 8). Because this is a "sentence four" remand, the Clerk of the Court is further directed to close this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            December 14, 2009

## - Appearances -

**For Plaintiff:**

Charles E. Binder, Esq.
Binder & Binder, P.C.
215 Park Avenue South, 6th Floor
New York, New York 10003
(212) 677-6801

**For Defendant:**

Susan D. Baird
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
(212) 637-2713